## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

———————————————————— x
                         :    **Civil Action No.**

KIMBERLY S. SULLIVAN a/k/a KIMN S.   :
SULLIVAN, on behalf of herself and others   :    **COMPLAINT - - CLASS ACTION**
similarly situated,   :
                         :
          Plaintiff,   :    **JURY TRIAL DEMANDED**
                         :
      v.   :
                         :
MARINOSCI LAW GROUP, P.C., P.A.   :
                         :
          Defendant.   :
———————————————————— x

## NATURE OF ACTION

1.     This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., for the benefit of Florida consumers who have been the subject of debt collection efforts by Marinosci Law Group, P.C., P.A. ("Defendant").

2.     Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3.     As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—explained, "[h]armful debt collection practices remain a

significant concern today. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

4.      And over one-third of those complaints involve debt collectors' attempts to collect debts that consumers did not owe.[2]

5.      To combat this serious problem in the debt collection industry, the FDCPA requires debt collectors to send consumers "validation notices" containing certain information about their alleged debts and their rights with respect to those debts. 15 U.S.C. § 1692g(a).

6.      A debt collector must send this notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," unless the required information was "contained in the initial communication or the consumer has paid the debt." *Id.*, § 1692g(a).

7.      Pertinent here, the validation notice must advise the consumer of "the amount of the debt." 15 U.S.C. § 1692g(a)(1).

8.      Moreover, the validation notice must advise the consumer of her rights to dispute the debt in writing, and to request, in writing, that the debt collector "obtain verification of the debt or a copy of a judgment against the consumer" and mail "a copy of such verification or judgment" to the consumer. *Id.*, § 1692g(a)(4).

9.      If the consumer disputes the debt in writing within thirty days of receiving such a notice, the debt collector must "cease collection of the debt, or any disputed portion thereof, until

---

[1]      *See* Brief for the CFPB as Amicus Curiae, ECF No. 14 at 2, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf.

[2]      *See* Consumer Financial Protection Bureau, *Fair Debt Collection Practices Act—CFPB Annual Report 2018* at 15 (2018), https://www.consumerfinance.gov/data-research/research-reports/fair-debt-collection-practices-act-annual-report-2018/.

the debt collector obtains verification of the debt" and mail the consumer a copy of that verification. *Id.*, § 1692g(b).

10.     Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the FDCPA. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000).

11.     As noted by the CFPB and the Federal Trade Commission, the validation notice requirement was a "significant feature" of the law that aimed to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1070 (9th Cir. 2016) (citing S. Rep. No. 95-382, at 4 (1977)).

12.     This case centers on Defendant's failure to comply with § 1692g(a)(1) by not specifying in a clear, intelligible manner the amount of the debt, and Defendant's failure to comply with §§ 1692g(a)(4)-(5) by neither providing the consumer with a statement that if she notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and mail a copy of such verification or judgment to the consumer, nor providing the consumer a statement that upon her *written request* within the thirty-day period, the debt collector will provide her with the name and address of the original creditor, if different from the current creditor.

## PARTIES

13.     Kimberly S. Sullivan a/k/a Kimn S. Sullivan ("Plaintiff") is a natural person who at all relevant times resided in Palm Beach County, Florida.

14.     Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

15.     Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arose from a transaction in which the money, property, insurance, or services that are the subject of the transactions were incurred primarily for personal, family, or household purposes— namely, a mortgage loan (the "Debt").

16.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

17.     Defendant is a law firm based in Broward County, Florida.

18.     Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect the Debt from Plaintiff.

19.     Upon information and belief, at the time Defendant attempted to collect the Debt from Plaintiff, the Debt was in default, or Defendant treated the Debt as if it was in default from the time that Defendant acquired the Debt for collection.

20.     Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

21.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

### JURISDICTION AND VENUE

22.     This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

23.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

24.     On March 4, 2014, Bank of America filed an amended mortgage foreclosure complaint against a number of parties, including Plaintiff, concerning a property known as 5 Marina Gardens Dr., Palm Beach Gardens, Florida 33410, seeking to collect "675,808.10 that is due on the Mortgage Note and Mortgage, together with interest from November 1, 2010, late charges, and all costs of collection including title search expenses…."

25.     On July 3, 2018, an attorney for Plaintiff, pursuant to Fla. Stat. 701.04, requested a payoff for the Debt.

26.     Thereafter, on or about July 12, 2018, Defendant sent an initial written communication to Plaintiff, through her counsel, in connection with the collection of the Debt.

27.     A true and correct copy of the July 12, 2018 written communication is attached as Exhibit A.

28.     Aside from formal pleadings, the July 12, 2018 communication was the first written communication Plaintiff received from Defendant.

29.     Plaintiff did not receive any other written communications from Defendant within five days of the initial July 12, 2018 communication.

30.     The body of Defendant's July 12, 2018 communication then opens with the following passage: "We represent **'Bank of America'**, the servicer of the loan, concerning the collection of the above referenced loan, and we are sending this letter pursuant to your request for the payoff figures." *Id*.

31.     Defendant's July 12, 2018 communication continues:

Because additional interest and other charges may vary from day to day, the amount due on the day you pay may be greater. You will also be liable for additional costs and attorney's fees incurred in the foreclosure action. Listed below is an itemization

5

of the amounts needed to payoff the above-referenced loan(s), which are good through **'GT DATE'**.

*Id*.

32.    On the second page of the July 12, 2018 communication, Defendant provided a box with two columns respectively titled "**Description of Charges**" and "**Payoff Amounts Due As of 'December 1, 2010'**." *Id.*

33.    The July 12, 2018 written communication advised Plaintiff that the total amount due *as of December 1, 2010* was $952,966.72. *Id*.

34.    The third page of the July 12, 2018 written communication included the following language:

> \* These amounts depend upon the services performed to litigate the foreclosure case and costs incurred during the case. Therefore, these are estimates amounts and are subject to increase depending upon various factors involved in the foreclosure case (see Explanation of Charges below). You must contact this office prior to sending the Payoff Amount for an updated list of itemized amounts.
>
> The payoff Amount may change under certain circumstances (see below). If you have any questions about the amounts listed above, please refer to the **Explanation of Charges** enclosed with this letter. Should you need further explanation, please contact our office.
>
> Changes in the Payoff Amount: The Lender reserves the right to demand amounts in addition to the charges stated above before or after the release of its security interest in the property if there was an error or omission in the above charges that was made in good faith, whether mathematical, clerical, typographical or otherwise. The payoff Amount is also subject to change to reflect services that may be performed on or after the date of this letter.
>
> \*\*\*\*\*
>
> **PLEASE NOTE – YOU MUST CONTACT THIS OFFICE BEFORE TENDERING ANY FUNDS TO VERIFY THE TOTAL AMOUNT DUE.**

*Id*.

35.     On the fourth page of the July 12, 2018 written communication, Defendant advised Plaintiff as follows:

**NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1601, AS AMENDED**

(1)     THE AMOUNT OF THE DEBT TO PAYOFF THE LOAN IS SET FORTH IN THIS LETTER AND IS OWED TO THE LENDER.

(2)     THE DEBTOR MAY DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, WITHIN 30 DAYS AFTER RECEIPT OF THIS LETTER. IF THE DEBTOR FAILS TO DISPUTE THE DEBT WITHIN 30 DAYS AFTER RECEIPT OF THIS LETTER, THE DEBT WILL BE ASSUMED TO BE VALID BY MARINOSCI LAW GROUP, P.C. (THE "FIRM");

(3)     IF THE DEBTOR NOTIFIES THE FIRM WITHIN 30 DAYS AFTER RECEIPT OF THIS LETTER THAT THE DEBT, OR ANY PORTION OF THE DEBT, IS DISPUTED, THE FIRM WILL OBTAIN VERIFICATION OF THE JUDGMENT WILL BE MAILED TO THE DEBTOR BY THE FIRM; AND

(4)     UPON THE DEBTOR'S REQUEST WITHIN 30 DAYS AFTER RECEIPT OF THIS LETTER, THE FIRM WILL PROVIDE THE DEBTOR WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT LENDER;

(5)     WRITTEN REQUESTS PURSUANT TO THIS NOTICE SHOULD BE ADDRESSED TO: FAIR DEBT COLLECTION CLERK, MARINOSCI LAW GROUP, P.C. 100 W. CYPRESS CREEK ROAD, SUITE 1045 FORT LAUDERDALE, FL 33309

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THE INSTRUCTIONS IN THIS LETTER PERTAIN TO YOUR DEALINGS WITH THE FIRM AS A DEBT COLLECTOR. IT DOES NOT AFFECT YOUR DEALINGS WITH THE COURT, AND IN PARTICULAR, IT DOES NOT CHANGE THE TIME AT WHICH YOU MUST ANSWER THE COMPLAINT. THE SUMMONS IS A COMMAND FROM THE COURT, NOT FROM THE FIRM, AND YOU MUST FOLLOW THE INSTRUCTIONS ON THE SUMMONS, EVEN IF YOU DISPUTE THE VALIDITY OR AMOUNT OF THE DEBT. THE INSTRUCTIONS IN THIS LETTER ALSO DO NOT AFFECT THE FIRM'S RELATIONSHIP WITH THE COURT AND THE FIRM MAY FILE PAPERS IN THE LAWSUIT ACCORDING TO THE COURT'S RULES AND THE JUDGE'S INSTRUCTIONS.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a) and 23(b)(3) on behalf of the following two classes:

### The Writing Class

All persons (a) with a Florida address, (b) to whom Marinosci Law Group, PC mailed an initial debt collection communication not returned as undeliverable to Marinosci Law Group, PC, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that stated (1) "[i]f the debtor notifies the firm within 30 days after receipt of this letter that the debt, or any portion of the debt, is disputed, the firm will obtain verification of the judgment will be mailed to the debtor by the firm;" or (2) "[u]pon the debtor's request within 30 days after receipt of this letter, the firm will provide the debtor with the name and address of the original creditor if different from the current creditor;"

### The Debt Class

All persons (a) with a Florida address, (b) to whom Marinosci Law Group, PC mailed an initial debt collection communication not returned as undeliverable to Marinosci Law Group, PC, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that stated (1) the payoff amounts "are estimates amounts and are subject to increase depending upon various factors involved in the foreclosure case (see Explanation of Charges below);" or (2) the consumer "must contact [Defendant] prior to sending the Payoff Amount for an updated list of itemized amounts;" or (3) "[t]he payoff Amount may change under certain circumstances (see below);" or (4) "[t]he Lender reserves the right to demand amounts in addition to the charges stated above before or after the release of its security interest in the property if there was an error or omission in the above charges that was made in good faith, whether mathematical, clerical, typographical or otherwise."; or (5) "[t]he payoff Amount is also subject to change to reflect services that may be performed on or after the date of this letter;" or (6) "below is an itemization of the amounts needed to payoff the above-referenced loan(s), which are good through 'GT DATE'", without defining the term GT DATE or (7) that provides a payoff amount as of a date at least 45 days prior to the date of the letter.

37.    Excluded from the classes are Defendant, its officers and directors, members of

their immediate families and their legal representatives, heirs, successors, or assigns, and any

entity in which Defendant has or had controlling interests.

38.     The proposed classes satisfy Rule 23(a)(1) because, upon information and belief, class members are so numerous that joinder of all of them is impracticable.

39.     The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

40.     The proposed classes are ascertainable because they are defined by reference to objective criteria.

41.     In addition, and upon information and belief, the names and addresses of all members of the proposed classes can be identified in business records maintained by Defendant.

42.     The proposed classes satisfy Rules 23(a)(2) and 23(a)(3) because there are questions of law or fact common to the class and Plaintiff's claims are typical of the claims of the members of the classes.

43.     To be sure, the claims of Plaintiff and all members of the classes originate from the same conduct, practice, and procedure on the part of Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed classes.

44.     Plaintiff satisfies Rule 23(a)(4) because she will fairly and adequately protect the interests of the members of the classes and has retained counsel experienced and competent in class action litigation.

45.     Plaintiff has no interests that are irrevocably contrary to or in conflict with the members of the classes that she seeks to represent.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

47.     Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

48.     There will be no difficulty in the management of this action as a class action.

49.     Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the classes.

50.     Among the issues of law and fact common to the class are:

    a.   Defendant's violations of the FDCPA as alleged herein;

    b.   Whether Defendant is a debt collector as defined by the FDCPA;

    c.   the availability of statutory penalties; and

    d.   the availability of attorneys' fees and costs.

**COUNT I: VIOLATION OF 15 U.S.C. § 1692g(a)(1)**

51.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 50.

52.     The FDCPA at 15 U.S.C. § 1692g(a)(1) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

* * * *

    (1) the amount of the debt.

53.     The July 12, 2018 communication did not contain the disclosure required by 15 U.S.C. § 1692g(a)(1), nor did Defendant provide such disclosure within five days thereafter.

54. Specifically, the July 12, 2018 communication violated 15 U.S.C. § 1692g(a)(1) by failing to specify in a manner understandable to the least sophisticated consumer the amount necessary to remit in order to pay the Debt in full.

55. This is, in part, because the July 12, 2018 written communication provides Plaintiff with a payoff amount as of December 1, 2010—a date over seven and a half years prior to the July 12, 2018. *See* Ex. A.

56. As well, the July 12, 2018 letter does not provide a good through date for the payoff amount, instead noting that "below is an itemization of the amounts needed to payoff the above-referenced loan(s), which are good through '**GT DATE**'." *Id.*

57. But the term "GT DATE" is not referred to anywhere else in the July 12, 2018 written communication, and thus there is no way to know what date the payoff is supposedly good through. *Id*.

58. Moreover, the confusion as to the amount due is compounded by the fact that Defendant caveats the total amount due as of December 1, 2010 by noting in the July 12, 2018 letter as follows:

- the payoff amounts "are estimates amounts and are subject to increase depending upon various factors involved in the foreclosure case (see Explanation of Charges below);"

- Plaintiff "must contact [Defendant] prior to sending the Payoff Amount for an updated list of itemized amounts;"

- "The payoff Amount may change under certain circumstances (see below);"

- "The Lender reserves the right to demand amounts in addition to the charges stated above before or after the release of its security interest in the property if there was an

error or omission in the above charges that was made in good faith, whether mathematical, clerical, typographical or otherwise;" and

- "The payoff Amount is also subject to change to reflect services that may be performed on or after the date of this letter."

59.     Given the foregoing, the July 12, 2018 written communication does not set forth the amount of the Debt in a manner in which the least sophisticated consumer could understand. *See, e.g., Gesten v. Phelan Hallinan PLC*, 57 F. Supp. 3d 1381, 1388-89 (S.D. Fla. 2014) (finding that defendant violated the FDCPA because the amount due in the notice was 39-days stale at the time the notice was sent and the notice, while notifying the plaintiff that "interest and other items will continue to accrue," did not notify the plaintiff of the interest rate or identify the other items).

60.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter failed to give her statutorily-mandated disclosures to which she was entitled.

61.     And Defendant's actions invaded a specific private right created by Congress, and the invasion of that right creates the risk of real harm. *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016).

**COUNT II: VIOLATION OF 15 U.S.C. § 1692g(a)(4)**

62.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 50.

63.     The FDCPA at 15 U.S.C. § 1692g(a)(4) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

*****

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

64.     Defendant's July 12, 2018 communication did not contain the proper disclosures required by 15 U.S.C. § 1692g(a)(4), nor did Defendant provide such disclosures within five days thereafter.

65.     Specifically, the July 12, 2018 communication violated 15 U.S.C. § 1692g(a)(4) by failing to inform Plaintiff that Defendant need only mail verification of the Debt to her, or a copy of any judgment, if she notified Defendant that she disputed the Debt, or any portion thereof, *in writing*.

66.     As a result, Defendant violated 15 U.S.C. § 1692g(a)(4).

67.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter failed to give her statutorily-mandated disclosures to which she was entitled.

68.     And Defendant's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm. *See Church*, 654 F. App'x at 995; *Macy v. GC Servs. L.P.*, 897 F.3d 747, 761 (6th Cir. 2018) ("In sum, Plaintiffs have satisfied the concreteness prong of the injury-in-fact requirement of Article III standing by alleging that GC's purported FDCPA violations created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.").

**COUNT III: VIOLATION OF 15 U.S.C. § 1692g(a)(5)**

69.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 50.

70.     The FDCPA at 15 U.S.C. § 1692g(a)(5) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

*****

 (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

71.     Defendant's July 12, 2018 communication did not contain the proper disclosures required by 15 U.S.C. § 1692g(a)(5), nor did Defendant provide such disclosures within five days thereafter.

72.     Specifically, the July 12, 2018 communication violated 15 U.S.C. § 1692g(a)(5) by failing to inform Plaintiff that Defendant need only provide her the name and address of the original creditor, if different from the current creditor, if she notified Defendant of her request for that information *in writing*.

73.     As a result, Defendant violated 15 U.S.C. § 1692g(a)(5).

74.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter failed to give her statutorily-mandated disclosures to which she was entitled.

75.     And Defendant's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm. *See Church*, 654 F. App'x at 995; *Macy*, 897 F.3d at 761.

### COUNT IV: VIOLATION OF 15 U.S.C. § 1692e

76.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 50.

77.     The FDCPA at 15 U.S.C. § 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

78.     The July 12, 2018 communication used deceptive and misleading representations in connection with the collection of the Debt.

79.     Indeed, based on the wording of the July 12, 2018 written communication, if Plaintiff were to remit the total amount due, "she would not know whether she had paid the debt in full." *Pimentel v. Nationwide Credit, Inc.*, No. 17-20226, 2017 WL 5633310, at *4 (S.D. Fla. Nov. 13, 2017).

80.     This is because the July 12, 2018 written communication provided Plaintiff with a payoff amount as of December 1, 2010—a date over seven and a half years prior to the July 12, 2018. *See* Ex. A.

81.     But the July 12, 2018 communication does not provide a good through date for the payoff amount, instead noting that "below is an itemization of the amounts needed to payoff the above-referenced loan(s), which are good through '**GT DATE**'." *Id.*

82.     The term "GT Date is not referred to anywhere else in the July 12, 2018 written communication, and thus there is no way to know what date the payoff is supposedly good through. *Id*.

83.     Moreover, the confusion as to the amount due is compounded by the fact that Defendant caveated the total amount due as of December 1, 2010 by noting in the July 12, 2018 letter as follows:

- the payoff amounts "are estimates amounts and are subject to increase depending upon various factors involved in the foreclosure case (see Explanation of Charges below).";

- Plaintiff "must contact [Defendant] prior to sending the Payoff Amount for an updated list of itemized amounts.";

- "The payoff Amount may change under certain circumstances (see below).";

- "The Lender reserves the right to demand amounts in addition to the charges stated above before or after the release of its security interest in the property if there was an error or omission in the above charges that was made in good faith, whether mathematical, clerical, typographical or otherwise."

- "The payoff Amount is also subject to change to reflect services that may be performed on or after the date of this letter.";

84.     Given the foregoing, the July 12, 2018 written communication is deceptive and misleading.

85.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter failed to give her statutorily-mandated disclosures to which she was entitled.

86.     And Defendant's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm. *See Church*, 654 F. App'x 990 at 995.

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Adjudging and declaring that Defendant violated 15 U.S.C. § 1692g(a)(1), 15 U.S.C. § 1692g(a)(4), 15 U.S.C. § 1692g(a)(5), and 15 U.S.C. § 1692e;

C.  Awarding Plaintiff and members of the classes statutory damages pursuant to 15 U.S.C. § 1692k;

D.  Awarding members of the classes any actual damages incurred, as applicable, pursuant to 15 U.S.C. § 1692k;

E.  Awarding Plaintiff and members of the classes their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Rule 23 of the Federal Rules of Civil Procedure;

F.  Awarding Plaintiff and members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  Awarding other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury.

Dated:  October 11, 2018

Respectfully submitted,

/s/ *James L. Davidson*
James L. Davidson
Jesse S. Johnson
FL Bar No. 723371
Fla. Bar No. 069154
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Counsel for Plaintiff and the proposed classes