## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| ————————————————— x | |
| : | **Civil Action No. 9:18-cv-81368-DMM** |
| KIMBERLY S. SULLIVAN a/k/a KIMN S. : | |
| SULLIVAN, on behalf of herself and others : | |
| similarly situated, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| MARINOSCI LAW GROUP, P.C., P.A. : | |
| : | |
| Defendant. : | |
| ————————————————— x | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT

### Introduction

Through the parties' settlement, Marinosci Law Group, P.C., P.A. ("Defendant") will create a settlement fund of $4,594.98. As a result, each participating class member will receive $27.68. The settlement fund equals 1% of Defendant's book value net worth, and thus is the most Kimberly S. Sullivan ("Plaintiff") could have recovered in statutory damages for the class had she prevailed at trial. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting statutory damages in a class action to the lesser of $500,000 or 1% of the net worth of the debt collector).

Defendant will separately pay the costs of administering the settlement, and attorneys' fees, costs and expenses to Class Counsel. Finally, Defendant has agreed to change its form debt collection letter to address some of the allegations made in this lawsuit, and to cease using the form of letter that it sent to Plaintiff and members of the class. This change in Defendant's practices will benefit not only Plaintiff and members of the class, but also any other consumers who receive Defendant's debt collection letters in the future.

1

In accordance with this Court's preliminary approval order, ECF No. 27, the settlement administrator distributed notice of the settlement—via direct mail—to each potential class member. Separately, Defendant provided notice of the settlement to the requisite government agencies pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"). *See* ECF No. 28.

No class member objected to any aspect of the settlement or sought exclusion from it. And no objections resulted from the CAFA notice, either.

Given this excellent result for consumers and lack of opposition to the settlement, Plaintiff respectfully requests that this Court finally approve the settlement. Defendant does not oppose the requested relief.

### Summary of the Settlement

This Court certified the following settlement class:

All persons (a) with a Florida address, (b) to whom Marinosci Law Group, P.C., P.A. mailed an initial debt collection communication not returned as undeliverable to Marinosci Law Group, P.C., P.A., (c) in connection with the collection of a consumer debt, (d) between October 11, 2017 and August 19, 2019, (e) that stated (1) the payoff amounts "are estimates amounts and are subject to increase depending upon various factors involved in the foreclosure case (see Explanation of Charges below);" or (2) the consumer "must contact [Defendant] prior to sending the Payoff Amount for an updated list of itemized amounts;" or (3) "[t]he payoff Amount may change under certain circumstances (see below);" or (4) "[t]he Lender reserves the right to demand amounts in addition to the charges stated above before or after the release of its security interest in the property if there was an error or omission in the above charges that was made in good faith, whether mathematical, clerical, typographical or otherwise;" or (5) "[t]he payoff Amount is also subject to change to reflect services that may be performed on or after the date of this letter;" or (6) "below is an itemization of the amounts needed to pay-off the above-referenced loan(s), which are good through 'GT DATE', without defining the term GT DATE; or (7) that provides a payoff amount as of a date at least 45 days prior to the date of the letter; or (8) "[i]f the debtor notifies the firm within 30 days after receipt of this letter that the debt, or any portion of the debt, is disputed, the firm will obtain verification of the judgment will be mailed to the debtor by the firm;" or (9) "[u]pon the debtor's request within 30 days after receipt of this letter, the

firm will provide the debtor with the name and address of the original creditor if different from the current creditor."

*See* ECF No. 27 at 3. The class consists of 166 persons.[1]

Following preliminary approval, First Class, Inc.—the Court-approved settlement administrator—implemented a robust notice program by providing direct mail notice to all class members at their last known address according to Defendant's records.

Prior to mailing the notice, First Class de-duplicated class members' records and updated addresses through the U.S. Postal Service. *See* Affidavit of Bailey Hughes, attached as Exhibit A, at ¶¶ 5-6. Notices were then disseminated on August 30, 2019. *Id.* at ¶ 7. And when 40 notices were later returned as undeliverable with no forwarding addresses, First Class undertook additional search measures to attempt to locate updated addresses for those class members. *Id.* at ¶¶ 9-12.

The class's reaction has been universally positive—not one person objected to, or asked to be excluded from, the settlement. *Id.* at ¶¶ 13-14. Moreover, no objections resulted from notice provided to governmental agencies under CAFA.

As a result, each of the 166 class members will receive a check for $27.68. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, the remaining funds will be sent to The Legal Aid Society of Palm Beach County, Inc.—the parties' designated *cy pres* recipient.

In addition, Defendant has agreed to stop using the form of debt collection letter at issue in this case.

---

[1]     The parties originally believed the class to consist of 167 persons. However, after accounting for the fact that one of the records in the class list was duplicative, the parties determined that there are 166 class members, including Plaintiff.

Separately, Plaintiff will receive, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), her "additional" damages of $1,000.

**Argument**

**I.      This Court should confirm its certification of the settlement class.**

This Court previously certified the class for settlement purposes. *See* ECF No. 27 at 3. Plaintiff agrees with this Court's reasoning and, as nothing has changed in the interim, does not believe it necessary to revisit certification in granting final approval. Thus, Plaintiff respectfully submits that this Court should confirm certification of the class.

**II.     This Court should finally approve the settlement as fair, reasonable, and adequate.**

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Fraught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).[2] Rule 23(e) itself requires this Court to consider additional factors such as whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong

---

[2]      Internal citations, quotations and footnotes are omitted, unless otherwise noted.

judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DN, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("'Public policy strongly favors the pretrial settlement of class action lawsuits.' Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice.'").

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

**A. The probability of Plaintiff's success on the merits and the range of possible recovery favor approval of the settlement.**

This Court must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *10 (M.D. Fla. Nov. 23, 2009), *aff'd sub nom. Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843 (11th Cir. 2011), and *aff'd sub nom. Canupp v. Liberty Behavioral Healthcare Corp.*, 447 F. App'x 976 (11th Cir. 2011) ("Courts judge the fairness of a proposed compromise by weighing the plaintiffs' likelihood of success on the merits against the amount and form of the relief achieved in the settlement.").

As an initial matter, statutory damages for the class here were capped by statute at $4,594.98— 1% of Defendant's book value net worth. *See* 15 U.S.C. § 1682k(A)(2)(B); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). Also noteworthy, there is no guarantee of full statutory damages at trial because the Fair Debt Collection Practices Act's ("FDCPA") damages provision is permissive rather than mandatory. That is, the law provides for

statutory damages awards up to certain amounts—$1,000 for Plaintiff, and 1% of the debt collector's net worth for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, even had Plaintiff prevailed at trial, the jury may have awarded little in the way of statutory damages, or even none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). The risk of a minimal damages award was not hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016), *vacated and remanded*, 706 F. App'x 529 (11th Cir. 2017) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs.").

Given the foregoing, the immediate relief provided by the settlement is substantial, and over $27 per class member represents an excellent recovery for the class. Indeed, Judge Rosenburg recently granted final approval to a settlement that amounts to $10 per class member in a case alleging FDCPA violations by a debt collector as a result of a form collection letter. *See Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-cv-14508, 2019 WL 1605656, at *2-3 (S.D. Fla. Apr. 9, 2019) (Rosenberg, J.).

And the settlement here also compares favorably to other similar FDCPA class settlements approved throughout the country. *See, e.g.*, *Dickens GC Servs. Ltd. P'ship*, No: 8:16-cv-803-T-30TGW, 2019 WL 2280456, at *2 (M.D. Fla. May 28, 2019) ($10 per class member); *Schell v.*

*Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (same); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

What's more, Plaintiff also secured Defendant's confirmation that it has ceased using the form of debt collection letter at issue—a benefit that was not necessarily available at trial. *See, e.g.*, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 977 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA."). In sum, considering the benefits obtained here, in comparison to those likely at trial, and the risks to moving forward, this factor supports approval of the settlement. *See In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. Mar. 24. 2014) ("Moreover, even if the Class were certified, Defendants may have moved to decertify the Class before trial or on appeal at the conclusion of trial, as class certification may always be reviewed. …Given such risk, this factor weighs in favor of approval of the Settlement.").

### B.  The complexity, expense and likely duration of the litigation favors settlement.

Turning to the next factor, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (Gold, J.). Indeed,

"there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

This case was no different, having settled on the eve of the deadline for Plaintiff to move for class certification. If the litigation had moved forward, the parties would have had to engage in time-consuming discovery, and Plaintiff would have had to obtain class certification, and prevail at summary judgment, or trial, and on appeal, to obtain any benefits for members of the class. *See, e.g.*, *Bennett v. Behring Corp.,* 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.)*, aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"). Even then, a damages award was in no way guaranteed. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages' to members of the class).

Given these considerations, final approval of the settlement is appropriate. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### C.  The factual record is sufficiently developed to enable Plaintiff and her counsel to make a reasoned judgment concerning the settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case

before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (King, J.). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties had extensive discussions about the merits of the claims. In addition, Defendant provided Plaintiff with information concerning the size of the class and Defendant's net worth—the sole determinant of the class's total potential statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B). Moreover, Plaintiff's counsel is well-versed in FDCPA litigation, having litigated numerous FDCPA class actions nationwide. *See* ECF No. 29-1, at ¶ 9.

The settlement was therefore consummated when the parties had a good view towards the strengths and weaknesses of their respective positions, and an understanding of the maximum potential recovery for the class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation."). Thus, both the parties and this Court are adequately informed to evaluate the fairness of the settlement presented. *See Moahoney v. TT of Pine Ridge, Inc.*, No. 17-80029, 2017 WL 9472860, at *7 (S.D. Fla. Nov. 20, 2017) (Middlebrooks, J.) ("Accordingly, the early settlement reached between the Parties and the extent to which the Parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

**D.  The positive reaction to the settlement further supports that the settlement is fair, reasonable, and adequate.**

No member of the class objected to, nor sought to exclude themselves from, the settlement. Moreover, notice of the settlement was provided to the appropriate government agencies as required by CAFA. ECF No. 28. No objections resulted from the CAFA notice.

This universally favorable reaction to the settlement supports its approval. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) (Goodman, J.) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Hall v. Bank of Am., N.A.*, No. 12–22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (Moreno, J.) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg, Inc.*, No. 13–60749, 2014 WL 5419507, at *4 (Cohn. J.) (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to class settlement, "such facts are overwhelming support for the settlement").

**E.  There was no fraud or collusion behind the settlement.**

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

Here, there is no fraud or collusion in reaching the settlement. The settlement was reached only after numerous discussions between counsel, and after Defendant provided Plaintiff with

information concerning the size of the class and Defendant's net worth. The settlement thus is not a product of collusion and was the result of arm's-length settlement negotiations when each party had a view as to the strengths and weaknesses of its position. *See, e.g.*, *Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-1376-J-34-PDB, 2019 WL 367648, at *6 (M.D. Fla. Jan. 30, 2019) ("Here, the Court has already found that the Parties' Settlement is the result of serious, informed, non-collusive, arm's length negotiations involving experienced counsel informed and familiar with the legal and factual issues of the Action. The record continues to support the Court's earlier finding.").

### F.  The opinions of Class Counsel and the class representative favor approval.

A strong presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Plaintiff's counsel is extremely experienced in class action litigation, particularly cases under the FDCPA. *See* ECF No. 29-1, at ¶ 9. And both Plaintiff and her counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. *See Veal v. Crown Auto Dealerships, Inc.*, No. 8-04-CV-0323-T-27-MSS, 2007 WL 2700969, at *3 (M.D. Fla. Sept. 13, 2007) ("The judgment of experienced counsel for both parties is that the

settlement should be approved. The opinions of counsel support the Court's finding that the settlement is fair and reasonable."). Correspondingly, the parties' and their counsel's strong support for this settlement favor final approval.

### G. The settlement treats class members equitably.

Rule 23(e)(2)(D) also requires that the Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) states that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim resulting from receipt of the same debt collection letter from Defendant. And as a result, the settlement provides that each participating class member will receive an equal payment from the settlement fund. *See Grant*, 2019 WL 367648, at *7 ("The Settlement Fund will be divided equally among all of the Class Loans held by the Settlement Class Members. This is an objectively reasonable way to distribute a settlement fund comprising $500,000 in statutory damages under the FDCPA, given that the purpose of statutory damages under the FDCPA is to deter future misconduct, not to compensate the class members for actual harm, and that any Settlement Class Member who suffered actual damages was free to opt out of the Settlement Class to pursue an individual action to recover those damages (along with attorneys' fees authorized by statute).").

Finally, the release affects each class member in the same way as each class member will release the same claims. As such, this factor supports approval. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This

proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### H.  Distribution of notice of the settlement satisfied due process requirements and the requirements of Rule 23.

Rule 23 requires "that class members be given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Fraught*, 668 F.3d at 1239.

Here, First Class used all reasonable efforts to provide direct mail notice to each member of the class. *See* Ex. A, ¶¶ 5-12. The Court-approved notice apprised class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Class Counsel's request for an award of attorneys' fees and expenses; and (6) how to make inquiries and obtain additional information. *See* ECF No. 24-1 at 30.

In short, this notice plan ensured that class members' due process rights were amply protected, and the settlement should be approved. *See* Fed. R. Civ. P. 23(c)(2)(B); *Fraught*, 668 F.3d at 1239-40.

### III.   The Court should approve the $1,000 award to Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i).

Finally, separate and apart from the class settlement fund, Defendant also will pay $1,000

in "additional" damages to Plaintiff, subject to this Court's approval. To that end, the FDCPA at

subsection 1692k(a) reads:

> (a)  Amount of damages
>
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> *          *          *
>
> (2)
>
> (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
>
> (B) in the case of a class action, **(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and** (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a) (emphasis added).

The statute thus expressly provides for a recovery of up to $1,000 for Plaintiff in addition

to such amount as each class member could recover.[3]

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval

of the settlement.

---

[3]      Plaintiff is not seeking any monies for an incentive award above the $1,000 in additional damages that Defendant has agreed to pay, even though courts often approve incentive awards to class representatives in these types of cases. *See, e.g.*, *Grant*, 2019 WL 367648, at *9 (approving incentive award of $3,500 in FDCPA class action); *accord Michel v. WM Healthcare Solutions, Inc.*, No. 1:10–cv–638, 2014 WL 497031, at *17 (S.D. Ohio Feb. 7, 2014) ("There is precedent for incentive awards in the neighborhood of $1,000 to $5,000 in consumer protection class actions."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 259 (D. N.J. 2005) (awarding $1,000 incentive award to plaintiff who was not deposed and not required to produce documents).

**Local Rule 7.1(a)(3) Certification**

Defendant does not oppose the requested relief.

Dated:  October 18, 2019

/s/ *James L. Davidson*
James L. Davidson
Jesse S. Johnson
FL Bar No. 723371
FL Bar No. 069154
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
Fax: (561) 961-5684
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Class Counsel

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 18, 2019, I filed the foregoing using the Court's CM/ECF

system, which will provide notice to:

Ernest H. Kohlmyer, III, Esq., LL.M.
Skohlmyer@shepardfirm.com
Mary Grace Dyleski
MDyleski@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Mailtland Center Parkway, Suite 100
Maitland, Florida 32751

Attorneys for Defendant

/s/ *James L. Davidson*
James L. Davidson
